Judge Ryland
delivered the opinion of the court.
The defendant Robinson was indicted at the September term of the criminal court for St. Louis county, in the year 1848, for grand larceny, stealing money from one John Donnelly, from on board the boat and *594 vessel called “ Marshal Ney 55 in said county. On the 22d September, at the same term in which the indictment was found, the defendant was brought into court, and plead not guilty to the indictment—and on the 17th day of October, being the same term, the case was continued until the next term. On the 6th of December, in the November term of said court, the case'was again continued : both of these continuances appear to have been on the part of the State. The first continuance was at the term in which the indictment was found: the second continuance was at the first regular term of the court which commenced at the end of the term at which the indictment was found.
On the 7th of February, 1849, the defendant filed his motion for a discharge, which motion is as follows, (viz.:)
State of Missouri vs. William Robinson.
St. Louis criminal court, January term 1849.
And now comes the said defendant, and moves the court to discharge him from further prosecution and imprisonment in this cause, for the following reasons : 1st. Because he has been imprisoned since the finding' of this indictment at September term of this court, without being brought to trial, in the time prescribed by law. 2d. Because the State has continued this cause for two terms without any good or legal cause therefor. 3d. Because this defendant has always been ready for trial, and the state 'has continually laid over said trial from term to term, and from day to day at this term, without good or legal cause. 4th. Because the indictment against the defendant has lost its legal effect by not being prosecuted according to law. C. C. SUMMONS,
Att’y. for defendant.
This motion was overruled at the January term 1849 of said criminal court; and was not disposed of for some time—after it was filed. On Saturday, 24th of February, being still the January term of the court, a trial was had : but the jury not agreeing, one of the jurors, by the consent of the defendant and the circuit attorney, was withdrawn—the jury were discharged. The cause was continued until next term, and the prisoner was remanded to jail. And on the 27th February, being the same term, the above motion was overruled.
At the next term of said court a trial was had ; and the defendant was found guilty, and sentenced to two years imprisonment in the penitentiary of the State. The indictment was found at September term. The State continued the case at the September term—also at the November term. At the January term, 1849, the motion was made to *595 discharge the prisoner: before it was decided by the court, the prisoner was tried, and the jury not agreeing, were discharged from rendering a verdict, and the prisoner was remanded to jail; and the motion to discharge was during the same term overruled.
The motion of the prisoner for his discharge, -is based upon the 25th section of the 6th article “ practice and proceedings in criminal cases,” which is in the following words, viz : is If any person indicted for an offence, and committed to prison, shall not be brought to trial before the end of the second term of the court having jurisdiction of the offence, which shall be held after such indictment found, he shall be entitled to be discharged, so far as relates to the offence for which he was committed, unless the delay shall happen on the application of the prisoner, or- shall be occasioned by the want of time to try the cause at such second term.”
The St. Louis criminal court holds six terms annually, commencing on the first Mondays in January, March, May, July, September, and November.
It is the opinion of a majority of the judges of this court, that the proper construction of the 25th section above recited is, that the prisoner must be tried before the end of the second term of the court, which shall commence after the lapse of the term at which the indictment was found : That is, the term at which the indictment is found is not included. Two terms after the indictment found shall commence ; and if the prisoner is not tried on or before the end of the second term which shall be held after the indictment found, then he is entitled to his discharge—unless there be want of time, &c. I think, therefore, that there is nothing wrong in the court below refusing to sustain the motion to discharge the prisoner.
There is no error, therefore, in refusing to arrest the judgment. I have thought proper thus to settle this question, although the present case might have been disposed of by this court without taking any notice of this point; but we shall be again called upon, if we now pass it by ; therefore, this point is now ruled for the State.
The motion for a new trial, which comes first in order, will not be taken up. In order properly to understand this case, I will here repeat the evidence. There was but one witness; Thomas Woodward, who testified as follows : “ I arrested the defendant some time last fall, before the indictment was found ; I arrested him on a charge of stealing some nineteen dollars in silver from one John Donnelly. Donnelly pointed out the defendant to me. I arrested him, defendant, on steamer Do *596 main, which was lying at the wharf, about two blocks above the Calaboose. When I arrested Robinson, I told him that I arrested him on a charge of stealing money from Donnelly. He replied Donnelly was a d—n fool—Donnelly was present. I took the defendant to the Calaboose—Donnelly was in company. After we had arrived at the Calaboose, I told defendant that Donnelly could not afford to lose the money, he worked too hard for it. Defendant put his hand in his pocket and drew out nine dollars and twenty-five cents, and threw it on the desk : there were two or three Spanish dollars, and some half dollars and other small change, amounting in all to the above sum : at the same time defendant said that Donnelly might take that. I replied that it did not belong to Donnelly, he should not take it. He said it was a part and parcel of Donnelly’s money. I asked him if it was a part and parcel of the money he had stolen from Donnelly the night before. Defendant answered that it was. I took charge of the money till the next morning, when I gave it up to Donnelly : Donnelly was with us all the time, from the time of the arrest until the defendant drew out the money. The Marshal Ney was then in the port of St. Louis : I saw her that day on which the arrest was made : I think they were loading at the Marshal Ney. From the fact the steamer Marshall Ney being loaded, I concluded that she had been in port two or three days. I have seen also boats come into port without having any load.” This was all the evidence given on the part of the State, and there was none on the defendant’s part. The defendant’s counsel asked the court for several instructions, many of which being mere abstract questions of law, this court will not notice. There was, however, one instruction asked for and refused by the court, which has a most important bearing on this and all similar cases. It is as follows : “ Extra judicial confessions, or those which are made out of court, are not sufficient to convict those who make them, unless they are corroborated by other evidence, and the crime be proven to have been committed by other testimony. ”
In this case, there is no proof of the corpus dclecti, other than the confessions of the defendant. Where was Donnelly, whose money was ¡charged to have been stolen ? His absence is not accounted for, and surely he knew best whether the money was stolen from him or not. Is there any proof when, or how much money was stolen from him ? Any proof about it being stolen from on board the Marshal Ney ? In the case of the people vs. Hennessey, 15 Wendell 147, Savage, chief justice, says it will be found, I think, that however broadly judges and elementary waiters have laid down the rule, yet most, if not al,l the Reported *597 icases show that very few convictions have taken place without some ¡evidence that a crime has been committed, independent of the confession of the accused. In the samevcase, the saino judge says: “The truth is, no court will ever rely upon the confession alone, when it is apparent that there is evidence aliunde to prove that an offence has been cqmmitted. ” From this case, then, we may safely say, (and in .it I find most of the English cases reviewed) that the confessions of a party not made in .open court, or on examination before a magistrate, but to an individual, uncorroborated by circumstances, and without proof aliunde that a crime has been committed, will not justify a conviction. Greenleaf in his treaties on evidence vol. 1 sec. 217, says : “ In the United States, the prisoner’s confession, when the corpus delecti is no.t otherwise proved, has been held insufficient for his conviction ; and this opinion certainly best accords with the humanity of the criminal code ; and with the great degree of caution applied in receiving and weighing the evidence of confessions in other cases ; and it ¡seems countenanced by approved writers on this branch of the law. It is .said, that full proof of the body of the crime, the corpus delecti, independently of the confession, is not required by any of the cases; and in many of them slight circumstances corroborating the facts were held Sufficient.
In the case of the State vs. Bromfield Long, 1st Haywood’s N. Carolina Reports page 524, we find the doctrine here contended for thus declared : “ Indictment for horse stealing, upon which the evidence was, that the horse was missing, and about three days afterwards, two men came with the horse and Long, tied, to the house of the owner. Long confessed to the owner he had taken the horse, and begged forgiveness. The two men who brought him were not present at the trial, and there was no other circumstance proved in the case.” The court decided. When A makps a confession, and relates circumstances which are proved to have actually existed, as related in the confession, that may be evidence sufficient for a jury to proceed upon to convict the prisoner; but a naked confession, unattended with circumstances, is not sufficient. A confession, from the very nature of the thing, is a very doubtful species of evidence, and to be received with great caution. As there are no confirmatory circumstances in the present case, it is better to acquit the prisoner; the jury found him not guilty. Wharton in his treatise on “ American criminal law,” page 183, says : “ In this coup try, in particular, there is a growing unwillingness to convictions on ppnfessions alone. The confessions of a party, it has been held in *598 several states, not made in open court, or on examination before a magistrate, but to. an individual uncorroborated by circumstances, and without proof aliunde, that a crime has been committed, will not justify a conviction. ” He further states, that in New Jersey a different doctrine is held, and it was there considered, in a late and important case,, that the confession of a hoy of twelve years, afterwards retracted, and corroborated only in unassented points, was enough to convict him of murder. He was executed accordingly : but the case stands alone in its character and result. State vs. Guild. 5 Halstead 165.
Wells, in his treatise on circumstantial evidence, see. 6 page 88, 39 vol. law library, says : “ But it may be doubted whether justice and policy ever sanction conviction, where there is no other proof of the corpus delecti, than the uncorroborated confession of the party.”
We therefore, without inserting other authorities here, which we find abundant, are inclined to support the doctrine, that the naked confessions of the prisoner, uncorroborated by other circumstances, will not justify a conviction ; that the corpus delecti must be proved by evidence other than such extra judicial confessions.
We therefore reverse the judgment of the criminal' court, and remand the cas.e.far further proceedings not inconsistent with this opinion.