**STATE of Missouri, Respondent,**

v.

**Chad D. MADORIE, Appellant.**

**No. SC 86024.**

Supreme Court of Missouri,
En Banc.

March 1, 2005.

___

Kent Denzel, Office of Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stephanie M. Morrell, Asst. Atty. Gen., Jefferson City, for Respondent.

MARY R. RUSSELL, Judge.

Chad D. Madorie ("Appellant") was convicted of driving while intoxicated in violation of section 577.010, RSMo 2000.[1] He appeals, arguing that his extrajudicial statements should not have been admitted in that the State failed to establish sufficient proof of the corpus delicti of the offense of driving while intoxicated. After an opinion by the Court of Appeals, Southern District, this Court granted transfer. Mo. Const. art. V, sec. 10. Because the State established sufficient proof of the corpus delicti of the offense of driving while intoxicated, the judgment is affirmed.

## I. Facts

At approximately 1 a.m., an officer of the Joplin Police Department was called to the scene of an accident. He observed a vehicle in the ditch just off the roadway near a private drive. The vehicle was in the ditch facing the roadway with its front pointing up. There was no one in the vehicle, but the officer observed Appellant standing near the vehicle. Another person, Kevin Dunn ("Friend"), was in the area away from the vehicle speaking to the first reporting officer. The vehicle was registered in Appellant's name.

Appellant approached the officer when he arrived. The officer observed that Appellant was "a little unstable on his feet, kind of swaying as he walked," and he stumbled occasionally. The officer noticed a "strong odor of intoxicants [and] alcohol-

ic beverages" around Appellant and that his eyes were watery and bloodshot. Appellant told the officer that when he was driving down the street, he saw Friend, who was walking. He went to turn around in the private drive to give Friend a ride, and while trying to turn around, got stuck in the ditch. Appellant initially asserted that he had nothing to drink that night, but later admitted he had "a little bit" earlier in the evening. The officer could smell alcohol on his breath during the conversation.

Because he was suspicious that Appellant was intoxicated, the officer gave him several field sobriety tests. Appellant failed these tests and was charged with driving while intoxicated. At the police station Appellant received Miranda warnings and consented to a breathalyzer test. After being told that the breathalyzer test showed his blood alcohol content was over the legal limit,[2] Appellant stated that he knew he was driving while intoxicated, but because the officer had not seen him with the keys in the ignition, he knew he could get out of it with a lawyer.

Appellant was convicted and sentenced to three years imprisonment. He appeals.

## II. Corpus Delicti

### A. Origin of the Corpus Delicti Rule

■ The term "corpus delicti" is Latin for "body of the crime." Black's Law Dictionary 346 (7th ed.1999). The term is used in the context of criminal law to describe the prosecutor's burden of proving that a crime was committed by *someone*, independent from a defendant's extra-

1. All references are to RSMo 2000 unless otherwise indicated.

2. The results of the breathalyzer test were deemed hearsay and were not admitted into evidence because the State failed to endorse

the person who performed the monthly maintenance on the machine and that person was not able to testify as to the accuracy of the machine.

judicial statements. *Id.; see also* Thomas A. Mullen, *Rule Without Reason: Requiring Independent Proof of the Corpus Delicti as a Condition of Admitting an Extrajudicial Confession,* 27 U.S.F. L.Rev. 385 (1993). Missouri case law has never discussed the history of the corpus delicti rule. To understand the rule and its application to this case, it is helpful to examine its origin in England and subsequent adoption in Missouri.

Most commentators trace the corpus delicti rule to 17th century England. *See, e.g.,* David A. Moran, *In Defense of the Corpus Delicti Rule,* 64 Ohio St. L.J. 817, 826–27 (2003); Mullen, at 399. Specifically, the idea of requiring corroborating evidence independent of a defendant's confession is traced to several murder cases in which the accused confessed to the killing, were hanged, and the victims were later found still alive. Moran, at 826–27; Mullen, at 400; *see* Perry's Case, 14 Howell St. Tr. 1312 (1660). Most commentators agree that the rule was never specifically adopted in English common law, or at least its application was limited to murder cases. Moran, at 829; Mullen, at 400–01. In the United States, however, the rule has been accepted as a basic requirement in any criminal case.

The rule's genesis in the United States is typically attributed to The Trial of Stephen and Jesse Boorn in Vermont. 6 Am. St. Tr. 73 (1819). Jesse and Stephen Boorn were brothers-in-law of the supposed victim in this case, Russel Colvin, who disappeared in 1812. *Id.* at 73–74. Seven years later, when some bones, later determined *not* to be human bones, were found near his home, Jesse Boorn was arrested for Colvin's murder. *Id.* at 74–75. Jesse implicated his brother Stephen in the murder. *Id.* at 75. Stephen ultimately confessed after initially denying wrongdoing when told it was his only

chance to avoid the death penalty. *Id.* at 76. Both brothers were convicted and sentenced to hang based solely on their confessions. *Id.* at 77.

While Jesse's death sentence was commuted to life imprisonment, Stephen narrowly avoided his own execution, when the supposed victim was later identified. *Id.* at 77, 92–94. Both men were granted new trials. *Id.* at 94–95. Their trials were widely publicized and began the United States' widespread adoption of the corpus delicti rule. *See* Moran, at 830–31. By the end of the 19th century, almost every jurisdiction in the United States adopted some form of a corroboration requirement for all crimes. Mullen, at 401.

This Court first explicitly adopted the corpus delicti rule in *Robinson v. State,* 12 Mo. 592 (1849). It held that "the confessions of a party not made in open court, or on examination before a magistrate, but to an individual, uncorroborated by circumstances, and without proof *aliunde* that a crime has been committed, will not justify a conviction." *Id.* at 597. This Court limited its holding, however, by stating that "*full* proof of the body of the crime, the *corpus delicti,* independently of the confession, is not required by any of the cases; and in many of them slight circumstances corroborating the facts were held sufficient." *Id.* (emphasis added).

This Court further explained the corpus delicti rule in *State v. Lamb,* 28 Mo. 218 (1859). In that case, it drew a distinction between judicial and extrajudicial confessions in relation to the corpus delicti rule:

Confessions are either judicial or extra-judicial. Judicial confessions are those made in conformity to law before the committing magistrate, or in court in the due course of legal proceedings. It seems that these confessions, uncorroborated by any other proof of the *corpus delicti,* are sufficient to found a convic-

tion, even if it be followed by a sentence of death, they being deliberately made, under the deepest solemnities, with the advice of counsel and the protecting caution and oversight of the judge.

Extra-judicial confessions are those which are made by a party elsewhere than before a magistrate or in court. It is of these confessions, when uncorroborated by any other proof of the *corpus delicti*, that the question is made, whether they are sufficient to found a conviction....

... We consider the true rule, as deduced from the current of authorities, to be, that an extra-judicial confession, with extrinsic circumstantial evidence satisfying the minds of a jury beyond a reasonable doubt that the crime has been committed, will warrant a conviction, although the dead body has not been discovered and seen, so that its existence and identity can be testified to by an eye-witness.

*Id.* at 230–32.

Initially, proof of the corpus delicti of a crime was broken down by this Court into two elements: (1) a criminal act; and (2) the *defendant's* agency in the production of the act. *See, e.g., State v. Bass,* 251 Mo. 107, 157 S.W. 782, 787 (1913); *State v. Dickson,* 78 Mo. 438, 447 (1883). Later this Court determined that the corpus delicti rule required only proof of the criminal act and the criminal agency of *someone*. *State v. Gillman,* 329 Mo. 306, 44 S.W.2d 146, 148 (1931). This rule is still applicable. *See State v. Edwards,* 116 S.W.3d 511, 544 (Mo. banc 2003) ("The *corpus delicti* in a homicide case consists of two elements: (1) proof of the death of the victim and (2) evidence that the criminal agency of another was the cause of the victim's death.").

## B. Admission of Appellant's Statements

A trial court has broad discretion to admit or exclude evidence at trial. *State v. Chaney,* 967 S.W.2d 47, 55 (Mo. banc 1998). This standard of review compels the reversal of a trial court's ruling on the admission of evidence only if the court has clearly abused its discretion. *Id.*

Extrajudicial admissions or statements of the defendant are not admissible in the absence of independent proof of the commission of an offense, i.e. the corpus delicti. *Edwards,* 116 S.W.3d at 544; *State v. Fears,* 803 S.W.2d 605, 608 (Mo. banc 1991). Evidence, however, that the defendant was the criminal agent is not required before the defendant's statement or confession is admitted. *State v. Litterell,* 800 S.W.2d 7, 10 (Mo.App.1990). In addition, absolute proof independent of his statement or confession that a crime was committed is not required. *State v. Hahn,* 640 S.W.2d 509, 510 (Mo.App.1982). "All that is required is evidence of circumstances tending to prove the corpus delicti corresponding with the confession. *Slight corroborating facts* are sufficient to establish the corpus delicti." *Id.* (emphasis added). The determination of whether there is sufficient independent evidence of the corpus delicti of an offense is fact specific and requires a case-by-case evaluation. *See, e.g., State v. Tillman,* 823 S.W.2d 43 (Mo.App.1991); *State v. Friesen,* 725 S.W.2d 638 (Mo.App.1987). Under the facts of this case, the trial court did not abuse its discretion in finding that the corpus delicti was proven and admitting Appellant's statements.

Section 577.010 states that "[a] person commits the crime of 'driving while intoxicated' if he operates a motor vehicle while in an intoxicated or drugged condition." The corpus delicti of driving while intoxicated under section 577.010 consists of evidence that someone operated a motor vehi-

cle while intoxicated. *Litterell,* 800 S.W.2d at 10. Here, the facts corroborating Appellant's statements are sufficient to establish that someone operated the vehicle while intoxicated.

"Operating" for purposes of section 577.010 means "physically driving or operating a motor vehicle." Sec. 577.001.1. There are sufficient facts corroborating Appellant's statement that he was driving his vehicle on the roadway immediately before it went into the ditch. First, the officer arrived on the scene of the accident only 15 minutes after the accident was reported. Appellant's vehicle was found in an unusual position, in a ditch with its nose pointing towards the roadway. Also, Appellant was standing next to the vehicle when the officer arrived on the scene, and when he arrived, Appellant immediately approached him to discuss the situation. Finally, the vehicle was registered in Appellant's name.

To prove the corpus delicti of the offense of driving while intoxicated, there also must be sufficient independent evidence that corroborates Appellant's statement to the officer at the police station that he was intoxicated while operating his vehicle. For purposes of section 577.010, a person is in an "intoxicated condition" when "he is under the influence of alcohol." Sec. 577.001.2. When he approached the officer, Appellant was unsteady and stumbled over the paved driveway. There was also a strong odor of alcohol around Appellant and on his breath during his conversation with the officer, and his eyes were watery and bloodshot. Appellant failed the three field sobriety tests. The cumulative independent evidence corroborates Appellant's statement that he was operating his vehicle while intoxicated.

Appellant argues that the State failed to produce evidence establishing that *someone* operated the vehicle while intoxicated because the State offered no evidence as to whether it was Appellant or Friend who operated the vehicle and no evidence of whether Friend was intoxicated. Appellant's argument fails to recognize that the State is not required to present independent proof of the defendant's criminal agency, outside of the defendant's admissions, to establish the corpus delicti. *See State v. Stimmel,* 800 S.W.2d 156, 158 (Mo.App.1990). The State is only required to prove that someone committed the crime with "[i]ndependent evidence of circumstances which 'correspond and interrelate' with the circumstances described in the statement or confession." *Id.* When the officer arrived, only Appellant and Friend were at the accident scene. Appellant was the one who was standing next to the vehicle and who immediately approached the officer when he arrived, supporting the proposition that Appellant was the driver of the vehicle. The State's evidence of Appellant's operation of the vehicle while intoxicated sufficiently "corresponds and interrelates" with the circumstances described in both of his statements to establish the corpus delicti of driving while intoxicated. The corpus delicti of driving while intoxicated was proven with sufficient corroborating facts.

### III. Denial of Hearing on Motion to Suppress

On the morning of trial, Appellant filed a motion to suppress his statements on the basis that they were the product of an illegal arrest because he was not arrested within one and one-half hours of the alleged offense as required by section 577.039. The court denied the motion stating that he could preserve all of his arguments by objecting at the time the testimony was offered. The court noted that he had many prior opportunities to file a motion to suppress, but chose to wait until a jury was called. Appellant now argues that the trial court violated his constitutional rights by not conducting a hearing

on his motion to suppress. In making his argument, Appellant states that because due process requires a procedure in which the voluntariness of a defendant's confession is determined by a proceeding separate from trial, he should have received a hearing on his motion to suppress on the basis that his statements were the product of an illegal arrest. No authority is cited for this proposition. The argument is without merit. Appellant was not prejudiced as he still had the opportunity to object to the admission of his statements when they were offered into evidence by the State,[3] even though the court did not conduct a separate hearing.

## IV. Conclusion

The judgment is affirmed.

All concur.

---

**3.** The State argues that although Appellant objected to the admission of his statements, he failed to preserve this issue because he did not make an offer of proof showing that he had evidence that his arrest was more than one and one-half hours after the alleged offense.