

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110967 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Francois County |
| v. | ) | Cause No. 18SF-CR01139-01 |
| | ) | |
| CECIL BURROW, | ) | Honorable Wendy Wexler Horn |
| | ) | |
| Appellant. | ) | Filed: December 5, 2023 |

### Introduction

Cecil Burrow ("Defendant") appeals from the judgment upon his conviction following a jury trial on four counts of sodomy in the first degree. Defendant argues the trial court erred in admitting his out-of-court statements as evidence because the State failed to establish the *corpus delicti* of each and every element on all counts. Defendant further argues the trial court erred in overruling his motion for judgment of acquittal on all counts. Finally, Defendant argues the trial court erred in admitting Defendant's statement about his impending divorce because it was improper character evidence and was not logically or legally relevant. We affirm the judgment of the trial court.

### Factual and Procedural History

*Facts*

Victim and her boyfriend went to the Black River on July 14, 2018.[1] Victim was wearing a black bikini, a black cut-off shirt, and Nike slides. While at the river, Victim began drinking whiskey and became increasingly intoxicated. Victim and her boyfriend left the river around 3 p.m. They began arguing, and Victim became belligerent. Victim angrily jumped out of her boyfriend's truck and began walking down the road. Victim's boyfriend initially drove off after Victim jumped out, but soon circled back and began looking for Victim. After looking for Victim for three to four hours, her boyfriend called Victim's parents. Victim's parents and others joined Victim's boyfriend in looking for her.

Victim, after walking along the road, got a ride from a person heading to Ironton. Near Lake Hanna, Victim saw her boyfriend pass by in his truck. Victim told the person to stop and Victim got out of the car so her boyfriend could see her. Victim's boyfriend did not see her. Victim went to the lake to cool down and then got out of the lake to walk across the dam. From there, Victim "went black" and could not remember what happened.

Other witness testimony revealed that, while Victim was blacked out, she was observed stumbling down the road and engaging in unusual behavior. Victim trespassed into a house she thought was her grandmother's house. She was intoxicated, her speech was slurred, and she was incoherent. Victim initially refused to leave and insisted it was her grandmother's house. Eventually, she left the house and disappeared. The homeowner called the Lake Hanna security guard and later identified Victim as the trespasser.

After leaving the house, Victim asked the neighbor if he had seen her grandmother, who lived nearby. As Defendant drove by, the neighbor asked Defendant to take Victim to her

---

[1] The personal identifying information of Victim and witnesses has been omitted pursuant to RSMo § 509.520 (Supp. 2023).

grandmother's house. Defendant told Victim he would take her to her grandmother's house, and Victim got in his truck.

The next thing Victim remembered was waking up in a trailer house and not knowing where she was. She was on a bed in a bedroom, and Defendant, who Victim did not know, was standing in front of her. Victim's bikini bottoms were off and her "butt hurt." Specifically, Victim had rectal pain. Victim recovered her bikini bottoms from the bedroom floor, put them on, and left the trailer.

After Victim left the trailer, the Lake Hanna security guard found Victim and confronted her about the earlier trespassing. She was a few hundred feet from Defendant's trailer, smelled of alcohol, and was intoxicated. Ultimately, the owner of the house in which Victim trespassed did not press charges because Victim was "under the influence" and was lost.

When the homeowner opted not to press charges, the security guard contacted Victim's boyfriend, and Victim's boyfriend picked her up. Victim told her boyfriend that she thought something had happened to her, but she had no recollection what it was. Victim's friend later told Victim to go to the hospital, and Victim reported the incident to police.

Within the next few days, the Lake Hanna security guard learned that Victim reported she might have been sexually assaulted. The security guard called the St. Francois County Sheriff's Office. The security guard also went to Defendant's trailer, and Defendant admitted to having sex with Victim. Defendant said Victim "was too drunk to know what was going on." Detectives from the sheriff's office also went to Defendant's property to talk to him. Defendant said he knew at some point they would be coming to see him.

Defendant went to the sheriff's office for a video-recorded interview. A detective began the interview by building a rapport with Defendant. During this conversation, Defendant brought

3

up that his wife asked him for a divorce. The detective asked why Defendant's wife wanted a divorce. Defendant responded that his wife did not like that he talked to other women online and that he had a Facebook girlfriend in Kentucky. The detective advised Defendant of his *Miranda* rights, and Defendant acknowledged he understood his rights and waived them.

Defendant told the detective he expected to be questioned about the incident, but he did not know when it would be. Defendant stated he gave Victim a ride so she could find her grandmother's house. After searching for a while, Defendant and Victim were unable to find her grandmother's house. They then returned to Defendant's camper, where Victim asked to lay down. Defendant admitted Victim was "plastered" and estimated Victim was an "eight out of ten" on a scale of how drunk she was. Defendant stated Victim propositioned Defendant for sex and Defendant readily agreed. Defendant helped Victim take off her clothing. Defendant admitted he put his penis in Victim's mouth, put his mouth on Victim's genitals, stuck his finger in Victim's anus, and had anal sex with Victim. Defendant stated he believed he did nothing wrong.

*Procedural History*

The State charged Defendant, via grand jury indictment, with four counts of sodomy in the first degree. During the pre-trial conference, Defendant asked the trial court to dismiss the case because the State failed to establish the *corpus delicti*. Defendant argued that, other than his own statements and that Victim's "butt hurt," there was no evidence that a sexual assault had occurred. The trial court expressed it had not heard any evidence yet and denied the motion, but granted Defendant a continuing objection. The case proceeded to trial.

At the close of the State's evidence, Defendant moved for judgment of acquittal for insufficient evidence and the State's failure to establish the *corpus delicti* on all four counts. The trial court denied the motion, stating the *corpus delicti* had been made because the "evidence that

4

was presented in the State's case [was] consistent with the theory of the case, along with the statements that were made by the defendant." Following the close of all evidence, Defendant renewed his motion for judgment of acquittal, and the trial court again denied the motion. The jury found Defendant guilty on all four counts of sodomy in the first degree. Defendant now appeals.

## Analysis

Defendant raises nine points on appeal. In Points I through IV, Defendant argues the trial court erred in admitting Defendant's out-of-court statements acknowledging that he engaged in sexual acts with Victim because the State failed to establish the *corpus delicti* of each and every element of each of the four sodomy counts. In Points V through VIII, Defendant argues the trial court erred in denying his motion for judgment of acquittal on each of the four counts. In Point IX, Defendant argues the trial court erred in admitting his statement about his impending divorce because it was improper character evidence and irrelevant.

### Points I through IV: *Corpus Delicti*

In Points I through IV, Defendant argues the trial court erred in admitting Defendant's extrajudicial statements acknowledging that he engaged in sexual acts with Victim because the State failed to establish the *corpus delicti* of each and every element of the charged crimes.

"A trial court has broad discretion to admit or exclude evidence at trial." *State v. Madorie*, 156 S.W.3d 351, 355 (Mo. banc 2005). This Court may reverse the trial court's evidentiary decision if it has clearly abused its discretion. *Id.* "A trial court abuses its discretion when its decision 'is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration.'" *State v. Scherrer*, 673 S.W.3d 899, 914 (Mo. App. E.D. 2023) (quoting *State v. Hood*, 451 S.W.3d 758, 765 (Mo. App. E.D. 2014)). We will reverse for

5

evidentiary error only if prejudice is demonstrated, that is, there is a reasonable probability the error affected the outcome of the trial. *Scherrer*, 673 S.W.3d at 914.

Missouri adopted the *corpus delicti* rule from English common law to avoid conviction of a criminal defendant without corroborating evidence independent of the defendant's out-of-court confession or "extrajudicial admissions." *See Madorie*, 156 S.W.3d at 354. "[C]onfessions of a party not made in open court, . . . uncorroborated by circumstances, and without proof *aliunde* that a crime has been committed, will not justify a conviction." *Id.* (quoting *Robinson v. State*, 12 Mo. 592, 597 (1849)). "Extrajudicial admissions or statements of the defendant are not admissible in the absence of independent proof of the commission of an offense, i.e. the corpus delicti." *Madorie*, 156 S.W.3d at 355.

Defendant insists the State failed to prove the *corpus delicti* as to each and every element of the charged crimes. But the State need not present independent evidence sufficient to prove each and every element of a crime to establish the *corpus delicti*. Rather, as our Supreme Court has explained:

> [A]bsolute proof independent of [a defendant's] statement or confession that a crime was committed is not required. "All that is required is evidence of circumstances tending to prove the corpus delicti corresponding with the confession. *Slight corroborating facts* are sufficient to establish the corpus delicti."

*Madorie*, 156 S.W.3d at 355 (emphasis in original) (quoting *State v. Hahn*, 640 S.W.2d 509, 510 (Mo. App. S.D. 1982)). This Court likewise has instructed that, "if there is evidence of corroborating circumstances independent of the confession, which tends to prove the offense by confirming matters related in the confession, both the corroborating circumstances and the confession may be considered in determining whether the corpus delicti has been established." *State v. Burroughs*, 627 S.W.3d 69, 76 (Mo. App. E.D. 2021).

6

Section 566.060 provides, "A person commits the offense of sodomy in the first degree if he or she has deviate sexual intercourse with another person who is incapacitated, incapable of consent, or lacks the capacity to consent, or by the use of forcible compulsion." Section 566.060.[2]

To establish the *corpus delicti* of each count of sodomy, there must be independent evidence corroborating Defendant's admissions that he sodomized Victim. In this case, multiple witnesses, including Victim, testified that Victim was, or appeared to be, extremely intoxicated, rendering her incapable of consent. The neighbor testified that Victim got into Defendant's truck with Defendant on the date in question. Victim testified that she was so intoxicated that she blacked out. When she awoke, she was on Defendant's bed, Defendant was there, her bikini bottoms were off, and she had rectal pain. Victim told her boyfriend she thought something had happened to her. Shortly thereafter, Victim reported the incident to police and to the authorities at Lake Hanna.

This evidence amounts to more than "slight corroborating facts." *See Madorie,* 156 S.W.3d at 355. The abundant evidence of Victim's extreme intoxication corroborated Defendant's statements that Victim was "plastered" and "too drunk to know what was going on" when he sodomized her. The neighbor's testimony placed Defendant with Victim immediately before the crimes occurred. Likewise, Victim's observations when she awoke on Defendant's bed, without her bikini bottoms, with rectal pain, and with Defendant in the bedroom, were highly corroborative of Defendant's specific admissions that he sodomized Victim. *See id.*

Here, the State presented independent evidence of circumstances corroborating Defendant's extrajudicial admissions to the charged crimes. Accordingly, the trial court did not abuse its discretion in finding the State proved the *corpus delicti* and in admitting Defendant's extrajudicial admissions. Points I through IV are denied.

---

[2] Unless otherwise indicated, all statutory references are to RSMo (2000) as amended.

<u>Points V through VIII: Sufficiency of the Evidence</u>

In Points V through VIII, Defendant argues the trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence to prove each of the four counts of sodomy.

In reviewing a trial court's denial of a motion for acquittal, this Court must determine if the State presented sufficient evidence to make a submissible case. *State v. Johnson*, 244 S.W.3d 144, 152 (Mo. banc 2008). Our review is limited to whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Armstrong*, 560 S.W.3d 563, 574 (Mo. App. E.D. 2018). "We consider the evidence and all reasonable inferences drawn therefrom in the light most favorable to the jury's verdict, and we disregard all evidence and inferences to the contrary." *Id.*

As previously mentioned, a person commits the offense of sodomy in the first degree if he "has deviate sexual intercourse with another person who is incapacitated, incapable of consent, or lacks the capacity to consent." Section 566.060. In Counts I through IV, the State alleged Defendant committed sodomy in the first degree by placing his penis in Victim's mouth, placing his mouth on Victim's genitals, placing his finger in Victim's anus, and placing his penis in Victim's anus. Defendant confessed to all of this in a video-recorded interview with law enforcement. He also confessed to the Lake Hanna security guard that he had sex with Victim while she "was too drunk to know what was going on." Defendant's confessions were corroborated by the same independent evidence tending to prove the *corpus delicti*.

Altogether, the evidence was more than sufficient for a reasonable juror to find Defendant guilty beyond a reasonable doubt of sodomy in the first degree on all four counts, as did the jury here. *See State v. Dickerson*, 609 S.W.3d 839, 847–49 (Mo. App. E.D. 2020) (finding evidence of

8

victim's intoxication sufficient to support convictions for sodomy in the first degree); *see also Armstrong*, 560 S.W.3d at 574. Accordingly, Points V through VIII are denied.

<u>Point IX: Improper Character Evidence</u>

In Point IX, Defendant argues the trial court erred in admitting Defendant's statement that his wife wanted a divorce because he had a Facebook girlfriend in Kentucky and his wife did not like him talking to other women online. Defendant characterizes his statement as impermissible character evidence and as logically and legally irrelevant to his commission of the charged crimes.

A trial court's decision on an evidentiary matter is reviewed for abuse of discretion. *State v. Davis*, 474 S.W.3d 179, 188 (Mo. App. E.D. 2015). "The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Id.* "We will reverse only when the error was so prejudicial that it deprived the defendant of a fair trial, meaning that there is a reasonable probability that the result of the trial would have been different had the evidence not been admitted." *Id.*

Defendant argues the trial court abused its discretion in admitting his statement because the statement was inadmissible evidence of Defendant's bad character in that it made Defendant out to be "especially creepy" and the kind of person who would have committed the charged crimes. Defendant's argument fails for several reasons.

First, Defendant's statement is not, strictly speaking, character evidence. "Character evidence is evidence 'that concerns a person's reputation, such as whether someone in the defendant's community views the defendant as a law-abiding citizen, a peaceable person, a truthful person, or as having any other general character trait.'" *State v. Howery*, 427 S.W.3d 236, 250 (Mo. App. E.D. 2014) (quoting *State v. Shockley*, 410 S.W.3d 179, 193 (Mo. banc 2013)).

9

"Character evidence does not involve proof of specific instances of conduct." *State v. Boss*, 577 S.W.3d 509, 519 (Mo. App. W.D. 2019) (quoting *Shockley*, 410 S.W.3d at 193).

Defendant mischaracterizes his statement as character evidence making Defendant out to be "the kind of person who would knowingly commit the sexual acts alleged as to [Victim] when she was incapacitated by intoxication and she could not consent to engaging in those acts." But Defendant's statement says nothing about Defendant's character for committing sexual acts with unconsenting victims. In fact, the statement is not overtly sexual at all; it was Defendant's explanation for why his wife wanted a divorce. *See Boss*, 577 S.W.3d at 519–20 (finding testimony that did not explicitly reference defendant's character was not character evidence); *cf. Shockley*, 410 S.W.3d at 192–93 (finding testimony about a defendant's violent history is character evidence and not a specific act).

Defendant's statement was relevant not to his character for being "creepy" or having non-consensual sex, but as context for how the interviewing detective built a rapport with Defendant and Defendant's state of mind at the time of his confession. The test for logical relevancy is a "very low-level test that is easily met." *State v. Butler*, 642 S.W.3d 364, 370 (Mo. App. E.D. 2022) (quoting *State v. Thomas*, 628 S.W.3d 686, 691 (Mo. App. E.D. 2021)); *see also State v. Robertson*, 674 S.W.3d 153, 160 (Mo. App. E.D. 2023). Defendant's statement here was logically relevant and not impermissible character evidence. *See generally State ex rel. Kemper v. Vincent*, 191 S.W.3d 45, 47 (Mo. banc 2006) ("The credibility of a confession is a matter for the jury, and evidence of the circumstances surrounding the confession is essential in order for the jury to assess credibility.").

Defendant also argues his statement was more prejudicial than probative and therefore was not legally relevant. "Logically relevant evidence is admissible only if legally relevant." *Butler*,

642 S.W.3d at 370 (quoting *Thomas*, 628 S.W.3d at 691). "Legally relevant evidence is that which has more probative value than prejudicial effect." *Butler*, 642 S.W.3d at 370. "The trial court is in the best position to weigh the probative value of the evidence against its prejudicial effect." *Robertson*, 674 S.W.3d at 160 (quoting *State v. Taylor*, 504 S.W.3d 116, 122 (Mo. App. E.D. 2016)).

Again, Defendant's argument notwithstanding, his statement had nothing to do with Defendant's character for non-consensual sex with victims, and more to do with the circumstances surrounding Defendant's confession to sodomizing Victim while she was incapable of consent. In other words, the admission of Defendant's statement was both logically and legally relevant. *See State v. Yust*, 675 S.W.3d 598, 613 (Mo. App. W.D. 2023).

Finally, even had the trial court abused its discretion in admitting Defendant's statement, Defendant cannot demonstrate prejudice. The evidence of Defendant's guilt—in particular, the testimony of multiple witnesses to Victim's extreme intoxication and inability to consent; Victim's testimony to waking up in Defendant's bed, without her bikini bottoms, with rectal pain, and with Defendant in the bedroom; and Defendant's confessions to both law enforcement and the security guard—was overwhelming. "Overwhelming evidence of guilt may lead an appellate court to find that a defendant was not prejudiced." *State v. Davis*, 318 S.W.3d 618, 642 (Mo. banc 2010) (quoting *State v. Banks*, 215 S.W.3d 118, 121 (Mo. banc 2007)).

The trial court did not abuse its discretion in admitting Defendant's statement about his impending divorce. Point IX is denied.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

11

_____

Cristian M. Stevens, J.

Robert M. Clayton III, P.J., and
Philip M. Hess, J., concur.