

# In the
# Missouri Court of Appeals
## Western District

IN THE MATTER OF THE CARE AND
TREATMENT OF RONALD WHITE,
A/K/A RONALD L. WHITE,

          **Appellant,**

v.

STATE OF MISSOURI,

          **Respondent.**

**WD80827**

**OPINION FILED:**

**May 28, 2019**

**Appeal from the Circuit Court of Atchison County, Missouri**
**The Honorable Corey Keith Herron, Judge**

**Before Division Two:**
**Thomas N. Chapman, Presiding Judge, Mark D. Pfeiffer, and Cynthia L. Martin, Judges**

Following a jury trial in the Probate Division of the Circuit Court of Atchison County,

Missouri, Ronald White (White) was involuntarily committed to the Missouri Department of

Mental Health as a Sexually Violent Predator (SVP)[1] under the Sexually Violent Predator Act,

Sections 632.480 through 632.525 (the "Act")[2]. In Point I White claims that the trial court erred

---

[1] To be committed as a sexually violent predator § 632.480(5) requires the state to prove that White had been convicted of a sexually violent offense (referred to as the "index offense") and had a mental abnormality that made it more likely than not that he would commit a future act of sexual predatory violence unless he was confined to a secure facility.

[2] Unless otherwise stated, statutory references are to the Revised Statutes of Missouri 2000 as supplemented through 2017.

in not granting his request for a limiting instruction regarding hearsay relied upon by the State's experts. In Point IV, White argues that the trial court erred in denying his motion for a directed verdict because the State failed to produce sufficient evidence to establish that he was more likely than not to commit a future act of sexual predatory violence. In his three other points on appeal White contends that his commitment is improper because he was denied effective assistance of counsel: (in Point II) that Counsel failed to call White's own expert witness, a psychologist that would have purported to testify that White was not more likely than not to commit a future predatory act; and (in Points III and V) that, during cross-examination of the State's experts, White's counsel elicited hearsay evidence of a past act of sexual violence against a child and the results of psychological tests (which indicated he had an elevated risk to recidivate). We affirm.

## FACTS AND PROCEDURAL HISTORY

White had sexually abused ten children by the time he was age 19, but was not prosecuted for those acts of abuse. In 1992, White was convicted of Aggravated Sexual Assault of an eight-year-old boy in the State of Texas; and a 10-year sentence was imposed. Five months after being paroled on that Texas offense, White committed the offenses which resulted in his conviction on May 7, 1996, in Atchison County, Missouri. White was convicted on two counts of statutory sodomy in the first degree, and was sentenced to twenty years in the Missouri Department of Corrections (DOC).

While serving in the DOC White was enrolled in the Missouri Sexual Offender Program (MOSOP), which is designed to help educate and rehabilitate those convicted of a sexual offense. While in the MOSOP program White struggled to control his behavior and indicated

difficulty in understanding the program materials; and ultimately voluntarily withdrew from the program. White never re-enrolled or completed the MOSOP program.

Prior to White completing his sentences in the DOC for the convictions in Atchison County, the State filed the instant action in the Probate Division of the Circuit Court of Atchison County, seeking civil confinement of White as a sexually violent predator upon his release from the DOC. In the course of a three-day jury trial, the State presented testimony from licensed psychologists Heather McMahon (McMahon) and Amy Griffith (Griffith), both of whom had performed their own independent evaluations of White. It was the opinion of both McMahon and Griffith that White had a mental abnormality that made it more likely than not that he would reoffend. Their opinions were based on their interviews of White, review of his records, and the results of tests that were administered to White.

With respect to the 1996 offenses (the index offenses) McMahon testified that White admitted to her that he had (then age 27) coaxed a young boy into an alley and compelled him to perform a sex act on White, and that White did the same. White admitted that he had sexually assaulted ten other pre-pubescent children, both male and female, by the time he was nineteen, that he had been previously imprisoned in Texas for sexually assaulting an eight year old boy, and that he had been on parole for five months when he committed the index offenses in Atchison County in 1996. McMahon noted that White continued to act out sexually in prison, despite negative consequences for that behavior. McMahon determined, based on her interview with appellant and the review of his records and his history, that White met the criteria for pedophilic disorder, that his ability to make decisions was impaired, and that he still had the urge to act out with children. McMahon also conducted the Static-99R, the Static-2002R, and the

3

STABLE 2007[3] actuarial assessments with White. McMahon testified that she was able to give an opinion, with a reasonable degree of psychological certainty, whether White had a mental abnormality that made him more likely than not to engage in predatory acts of sexual violence if not confined; and indicated that he did suffer such an abnormality that made him more likely than not to reoffend.

During McMahon's testimony, counsel for White (Trial Counsel) requested that the trial court instruct the jury that, while McMahon was allowed to use hearsay evidence of White's prior offenses in arriving at her expert opinion, the statements could not be considered "independent substantive evidence" that he had had actually committed those acts.[4] The trial court indicated that if any such instruction were given it would be at the conclusion of the case and not during testimony. Ultimately, the trial court determined that, because the hearsay evidence was properly relied upon by the expert in forming her opinion, a limiting instruction would confuse the jury. Consequently, the trial court did not submit the limiting instruction proposed by White (nor any other such limiting instruction).

---

[3] These actuarial instruments are tests which utilize an individual's responses to questions in addition to their criminal history, age and other factors to generate a number score that is intended to predict whether or not they are likely to commit a sexual offense. This score is determined by White's correlation to a pool of individuals with a known recidivism rate.

[4]At trial Trial Counsel raised the following objection:

> I need to make a record. Anything she's going to say about the details of the offense is hearsay. She's an expert, she can rely on it, but with the limiting instruction she cannot testify as to substantive evidence. It can only be used to make a credibility determination as to the weight to be given to her testimony. If the court is going to overrule my hearsay objection I ask the court to give a limiting instruction instructing the jury they are only to receive this evidence to go to the weight of her testimony and not to receive the substantive evidence.

Trial Counsel submitted a proposed jury instruction which stated that "An expert can rely on hearsay information provided those sources are not offered as independent, substantive evidence, but rather serve only as a background for his or her opinion."

Griffith, the Clinical Director for the Missouri Sex Offender Program in the Missouri Department of Corrections, also testified as to her evaluation of White. In a telephone interview White admitted to Griffith that he had engaged in sexual violence against prepubescent children. He also related that, prior to engaging in his first offense, he had sexually fantasized about his victim. Griffith noted that White's committing the index offense while on parole and in treatment, within five months of release from prison in Texas, was consistent with her finding that he suffered from an inability to control his urges. White indicated, at the time of the interview, that he had recently been purposely masturbating to sexual thoughts of children. Griffith testified that White's persistent sexual urges directed at children, despite being confined and in treatment, showed difficulty controlling those urges.

White's Trial Counsel elicited testimony from two expert witnesses that challenged the opinions of McMahon and Griffith. Dr. Kamel Rekab (Rekab), a professor of statistics at the University of Missouri-Kansas City, testified that actuarial instruments such as the Static-99R and the Static-2002 were inaccurate predictors of behavior. Rekab also pointed out that according to the Static 99R model, White's score of 4, did not statistically predict him to recidivate.

> Q. So even if we accept the Static-99R and use it on it's [sic] own terms, the model itself says that with a score of 4 that person is predicted not to recidivate?
>
> A. It's not that -- I can say more. Any score of 5 and up he will recidivate. Any score of 5 and up; 5, 6, 7 and up to 12 will recidivate. Any score from 4 and below will not recidivate because of the threshold. Threshold is 18 percent.

White's second expert, Eric Janus (Janus), was a law professor who specialized in the study of how the law addresses sexually violent offenders and had published on the subject of

volitional control.  Janus testified that, after he had reviewed the reports completed by the State's experts, it was his opinion that the reports failed to incorporate the standard and principles accepted in the field of law and psychology to distinguish a sexually violent predator from a typical recidivist.  However, the trial court limited Janus' testimony, sustaining objections that Janus could not testify regarding the sufficiency of the work of the state's experts, as follows: "The question is whether he's qualified to offer an opinion about whether the forensic psychologists did their jobs properly which he's not qualified to do, so the objection is sustained."

At the conclusion of the evidence the jury returned a verdict finding that White was a sexually violent predator, and the trial court then entered its judgment committing him to the Department of Mental Health as a sexually violent predator.  This appeal follows.

## ANALYSIS

### No error in refusing to submit the limiting instruction proposed by White.

In order to have White committed as a sexually violent predator, the State was required to prove that he had been convicted of an "index" sexually violent offense[5] and that he had a mental abnormality making him more likely than not to commit a future act of sexually predatory violence unless confined to the custody of the Department of Mental Health.  § 632.480(5). There is no dispute that the 1996 convictions in Atchison County (of statutory sodomy in the first degree) met the first requirement that White had been convicted of an "index" sexually violent

---

[5] An "index" offense is the underlying sexually violent offense that provides the basis required for initiating an SVP proceeding.  *See § 632.480(4)* (defining the offenses that qualify as sexually violent).

6

offense. *Id.* The dispute at trial was whether White had a mental abnormality that made him more likely than not to commit a future act of predatory sexual violence if not confined. *Id.*

In his first point on appeal, White contends that the trial court erred in failing to give a limiting instruction regarding hearsay evidence that the experts related to the jury as part of the basis for their opinions. White concedes that such "evidence which is inadmissible for one purpose may be admissible for another." *Danbury v. Jackson Cty.*, 990 S.W.2d 160, 165 (Mo. App. W.D. 1999). At the instruction conference, White submitted the following proposed jury instruction: "An expert can rely on hearsay information provided that those sources are not offered as independent substantive evidence, but rather serve only as a background for his or her opinion." The trial court found this instruction improper, and Trial Counsel did not provide an alternative limiting instruction.

"Whether to give a cautionary instruction is generally within the trial court's discretion. When exercising its discretion, the court should be guided by the degree to which the jury may be misled by the evidence." *Martin v. Durham*, 933 S.W.2d 921, 924 (Mo. App. W.D. 1996) (internal citations omitted). In this case, White asserts that, under Missouri law, he is entitled to the limiting instruction as a matter of right. *Eltiste v. Ford Motor Co.*, 167 S.W.3d 742, 756 (Mo. App. E.D. 2005) ("'When a trial court receives evidence admissible for one purpose but not for another, a party upon request is entitled to an instruction limiting the extent and purpose for which the jury may consider the evidence.'") (quoting *Clayton Center Associates v. W.R. Grace & Company*, 861 S.W.2d 686, 691 (Mo. App. E.D. 1993)). Our inquiry is not only into whether White was entitled to a limiting instruction, but also whether the failure to provide the instruction materially affected the result of the trial, resulting in prejudice to White. *Id.* ("While failure to

7

give an instruction to which a party is entitled to [sic] is error, reversal is warranted only if the error is prejudicial, that is when the merits of the action are materially affected.").

White argues that he was prejudiced because the jury could have considered the hearsay statements relied upon by the experts in forming their opinions as substantive evidence of the truth of the matters asserted in those statements. In particular, White contends that there was a danger that the jury would commit him because of the incidents of sexual abuse that he related to McMahon. White maintains that the State encouraged this in its closing argument. "[W]e know that he has at least 11 victims in his history that we never charged, that he was never punished for. Mr. White is the reason why we have this [SVP] legislation, why we have this proceeding."[6] White's claim that the trial court was required to provide the instruction, and the prejudice he contends sprang from it, fails to acknowledge the nature of the proceeding.

> In Missouri, SVP commitments are civil proceedings. While some criminal due process protections are afforded to those facing commitment, there is no requirement that the trial court give a 'statement to doctors' instruction in civil cases generally or under the SVP statute. The instruction is required only in criminal cases to protect the accused from self-incrimination, a constitutional right which the U.S. Supreme Court has held is not applicable in civil commitment proceedings. Because treatment, rather than punishment, was the purpose of the proceeding, Mr. Wadleigh's statements to the mental health experts were not shielded by the Fifth Amendment privilege.

*Care & Treatment of Wadleigh v. State,* 145 S.W.3d 434, 439-40 (Mo. App. W.D. 2004) (internal citations omitted).

In Missouri, the statements made by White to McMahon, even though hearsay, would be admissible as an admission against interest. *Gamble v. Browning*, 277 S.W.3d 723, 728 (Mo.

---

[6] McMahon indicates that White admitted to assaulting 10 other children before being charged with the offenses in Texas and Missouri.

App. W.D. 2008). Consequently, the jury would have been free to view White's admissions to McMahon and Griffith as substantive evidence of the truth of the matter they asserted.

White's proposed limiting instruction asked that the jury be informed that all hearsay evidence utilized by the experts not be viewed "as independent substantive evidence." In the context of evidence which is admissible for one purpose but not another "the giving of a limiting instruction depends on the making of 'a proper request'… '[i]n the absence of a proper request therefor, the objector cannot successfully complain of the failure of the court to give a limiting instruction.'" *Sapp v. Morrison Bros. Co.*, 295 S.W.3d 470, 484 (Mo. App. W.D. 2009) (quoting *Dyer v. Globe–Democrat Publ'g Co.,* 378 S.W.2d 570, 581 (Mo. 1964)). When a party's request for a limiting instruction does not "recognize[] the full range of the issues to which the…evidence was relevant, they cannot obtain reversal here based on the trial court's refusal to give the limiting instruction they actually tendered." *Id*. at 486. Since White's proposed limiting instruction failed to delineate which hearsay statements relied upon by the State's experts were not admissible as substantive evidence of the truth asserted, we do not find that the trial court erred in failing to give it.

Furthermore, White's own admissions (that he had sexually abused 11 other children before the 1996 offenses in Atchison County) were the primary sources of hearsay discussed by the State's experts in explaining their opinions at trial. White's counsel made no specific contemporaneous objection to hearsay of others relied upon by the State's experts, and, in fact, it appears there is little discussion in the direct examination of the State's experts regarding such

9

other hearsay.[7]  In light of White's own damning admissions, even if defense counsel had made a timely or proper request for a limiting instruction regarding the other hearsay relied upon by the State's experts, the failure to give a limiting instruction did not materially affect the result of the trial.  *See Eltiste,* 167 S.W.3d at 756.

Point I is denied.

## No error in denying White's motion for a directed verdict. [8]

In his fourth point on appeal, White maintains that the trial court erred in denying his motion for a directed verdict, because the State failed to introduce evidence that he was more likely than not to reoffend by committing predatory acts of sexual violence.  White argues that the State therefore failed to make a submissible case under the Act.

When reviewing the denial of a motion for a directed verdict, this Court is required to determine whether the State made a submissible case.  *In re Care & Treatment of Cokes*, 107 S.W.3d 317, 321 (Mo. App. W.D. 2003).  In making that determination, we view the evidence and all reasonable inferences from that evidence in the light most favorable to the State.  *Id*.  We disregard all evidence contrary to the State's case.  *Id*.  We do not supply missing evidence nor do we "give the plaintiff the benefit of unreasonable, speculative, or forced inferences."  *Id*.  Ultimately, we require that the evidence, and reasonable inferences drawn from it, establish all elements and not leave any substantive issue to speculation.  *Id*.

---

[7] The only other hearsay that is specifically discussed were police reports related to the 1996 index offenses, which were brought up by White's counsel in cross-examination and redirect of McMahon, and discussed below regarding White's third point on appeal.

[8] We address White's fourth point on appeal out of order because his other points on appeal all spring from the assertion that his counsel was ineffective; thus, we will address them together.

In the instant case, White contends that the State failed to put forward "evidence from which the jury could reasonably infer that Mr. White's past or future acts would be 'directed towards individuals, including family members, for the primary purpose of victimization.'" App. Br. 42, (quoting § 632.480(3)). White relies on *Cokes* for this assertion. In *Cokes*, the expert witness for the State was asked whether the defendant was likely to "sexually reoffend." 107 S.W.3d at 322. The expert answered that in his opinion "in terms of probability it is more likely than not that he will reoffend." *Id.* This Court found that the state's expert never expressed an opinion as to whether he would reoffend in a predatory and sexually violent way as required by the Act; and reversed and remanded the case for a new trial. *Id.* at 323-25. White asserts that the same issue is present in McMahon's testimony in this case:

> Q. Doctor, you already told us you believe within a reasonable degree of scientific certainty that Mr. White suffers from a mental abnormality. Do you have an opinion within a reasonable degree of scientific certainty whether or not that mental abnormality makes Mr. White more likely than not to engage in predatory acts of sexual violence if he is not confined within a facility?
>
> A. Yes, I do.
>
> Q. What is your opinion?
>
> A. If Mr. White is not confined to a secure facility his mental abnormality of pedophilic disorder is going to make it so that he is more likely than not to re-offend.

In *Cokes*, this Court noted that the expert's written report stated that the defendant's "mental abnormality makes him more likely than not to engage in predatory acts of sexual violence." *Id.* at 325. The report was not offered into evidence at trial, but had it been, this Court found that it would have been sufficient evidence:

11

[T]he record indicates that the State could have presented sufficient evidence to allow the jury to reasonably infer that the appellant was more likely than not to engage in predatory acts of sexual violence had the State's counsel simply asked Dr. Mandracchia whether, in his expert opinion, the appellant's likelihood of sexually reoffending would occur in a violent and predatory manner.

*Id.*

In this matter, the State asked its expert, McMahon, exactly what was suggested in *Cokes* -- whether she had an opinion as to whether White was more likely than not to engage in such predatory acts of sexual violence if not confined. McMahon replied that she had such an opinion, and her opinion was that, if not confined, he was more likely than not to reoffend. White argues that McMahon's answer was not an affirmative response to the State's question, but instead a clarification. This argument elevates form over substance. In the context of the testimony it is reasonable to infer that McMahon was answering affirmatively to the State's inquiry – that it was her opinion that he was more likely than not to reoffend by committing a predatory act of sexual violence if not confined.[9]

---

[9] We also note that a similar question was posed to Griffith after she detailed that White reported being sexually attracted to children, that he "lately" had been masturbating to sexual thoughts of children and he had been unable to restrain himself from engaging in sexually inappropriate behavior even in a highly controlled correctional environment.

> Q. Now as a result of everything that you've told us about here this afternoon do you have an opinion about whether or not this mental abnormality you described to the jury is a congential [sic] or acquired condition affecting the emotional or volitional capacity that predisposes Mr. White to create sexually violent offenses because he has difficulty controlling his behavior?
>
> A. Yes.
>
> Q. You hold that opinion to a reasonable degree of scientific certainty?
>
> A. Yes.

Griffith also indicated that White was "engaging in what we call offense parallel behaviors which are behaviors similar in dynamic to the [index] offense." In this context, it could be inferred that it was her opinion that White's inability to control his behavior represented a danger for him to commit sexual offenses of the type which caused him to be incarcerated.

Point IV is denied.

**No prejudice resulted from purported ineffective assistance of counsel.**

In his second, third, and fifth points on appeal, White claims that the trial court erred in permitting him to be committed as a sexually violent predator because he did not receive effective assistance of counsel. Because an SVP proceeding impairs a protected liberty interest, the Missouri Supreme Court has held that individuals subject to a commitment proceeding have a due process right to counsel that attaches when the action is brought. *Bernat v. State*, 194 S.W.3d 863, 868 (Mo. banc 2006). In *Grado v. State*, 559 S.W.3d 888 (Mo. banc 2018), the Missouri State Supreme Court recently made clear that the right to counsel includes the right to effective counsel.

> [A]n SVP proceeding is the *original* trial at which the initial determination is made whether the respondent can be involuntarily committed as an SVP. These original actions are brought by the State and result in a proceeding in which the courts determine in the first instance whether the person's liberty will be taken away. Counsel in these proceedings help to protect the individual from having a fundamental right of liberty taken away. The SVP proceeding is in this way more comparable to the trial of a criminal defendant than to the criminal defendant's postconviction proceeding. In the criminal context, this Court has recognized the right to counsel means the right to effective counsel.

*Id*. at 895-96.

Noting that there is currently no statutory mechanism that provides a method for the subject of an involuntary commitment as a sexually violent predator to assert that their right to effective counsel was infringed, the *Grado* Court held that, where the record was adequate, claims of ineffective assistance of counsel could be raised on direct appeal. *Id*. at 897.

However, the *Grado* Court declined to elect a standard of review for evaluation of the effectiveness of counsel, finding that Grado's counsel was effective under either the "meaningful

hearing" standard proposed by the State or the *Strickland* test proposed by Grado. *Id*. at 898.[10]

For the purpose of reviewing whether White's claims of ineffective assistance of counsel are cognizable on this direct appeal we will review the effectiveness of White's counsel under the more exacting *Strickland* standard. Under the test outlined in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), White was required to prove two elements to establish he was entitled to relief for the inadequate performance of counsel: "(1) that counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney; and (2) that [White] was thereby prejudiced." *Haskett v. State*, 152 S.W.3d 906, 909 (Mo. App. W.D. 2005). If White fails to demonstrate either of the two elements it is not necessary for us to conduct an analysis of both the ineffective assistance and prejudice prongs. *Johnson v. State*, 451 S.W.3d 276, 279 (Mo. App. W.D. 2014).

---

[10] In full, the *Grado* Court held:

> Under the "meaningful hearing" standard, this Court would determine – based on the record on appeal – whether counsel provided Mr. Grado with a meaningful SVP hearing. *Strickland* would require Mr. Grado to show by a preponderance of the evidence: "(1) his or her counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation, and (2) he or she was prejudiced by that failure." *Mallow v. State, 439 S.W.3d 764, 768-69 (Mo. 2014)*. In order to overcome the "strong presumption that counsel's conduct was reasonable and effective," *Smith v. State, 370 S.W.3d 883, 886 (Mo. banc 2012)*, Mr. Grado would have to identify "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance," *Zink v. State, 278 S.W.3d 170, 176 (Mo. banc 2009)*. "Trial strategy decisions may only serve as a basis for ineffective counsel if they are unreasonable." *Id.* In order to prove the prejudice prong of *Strickland*, the question is whether "there is a reasonably probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland, 466 U.S. at 694*, 104 S.Ct. 2052.

*Id.* at 898.

In his second point, White contends that Trial Counsel's failure to call Dr. Luis Rosell (Rosell) as an expert witness constituted ineffective assistance of counsel, because Rosell would have testified that White was not a sexually violent predator. To establish that his trial counsel did not exercise the customary skill and diligence of a reasonably competent attorney, White has to show that the decision not to call Rosell as a witness "fell outside the wide range of professional competent assistance." *Zink v. State*, 278 S.W.3d 170, 176 (Mo. banc 2009) (quoting *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006)). Failure to call a witness can support a claim for ineffective assistance of counsel if "(1) trial counsel knew or should have known of the existence of the witness; (2) the witness could be located through reasonable investigation; (3) the witness would testify; and (4) the witness's testimony would have produced a viable defense." *Radmer v. State*, 362 S.W.3d 52, 55 (Mo. App. W.D. 2012) (internal quotation marks omitted) (quoting *Hutchison v. State*, 150 S.W.3d 292, 304 (Mo. banc 2004)). Our Supreme Court determined that "[t]rial counsel's selection of which expert witnesses to call at trial generally is a question of trial strategy and is virtually unchallengeable. To show ineffective assistance of counsel based on failure to present an expert witness, a movant is required to show what the evidence would have been if the witness had been called." *Anderson v. State*, 564 S.W.3d 592, 602 (Mo. banc 2018) (internal citation omitted).

The record on appeal is devoid of any discussion of why Trial Counsel did not call Rosell as a witness.[11] The record does not establish whether Rosell was available to testify or whether

---

[11] White asserts that Rosell was endorsed as a defense witness, but we could find nothing in the legal file to support this assertion.

that testimony would have been helpful to White.[12]  The record does not indicate whether the decision to not call Rosell as a witness was intended trial strategy; or whether it was an oversight or a failure to be prepared.  The record is therefore inadequate to determine whether not calling Rosell as a witness was reasonable trial strategy; or whether, in failing to call Rosell, trial counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney.[13]  The record does not therefore establish (one way or the other) whether not calling Rosell as a witness (as alleged in Point II) satisfies the first (performance) prong of the *Strickland* test.

In his third and fifth points on appeal, White contends that his counsel was ineffective in cross-examining the State's expert McMahon.  In particular, in his third point White asserts that trial counsel's performance was ineffective, when, in cross-examining McMahon, he elicited testimony regarding a police report of the 1996 Missouri index offense, which indicated that White had anally sodomized the child victim.  In cross-examining McMahon, White's counsel attempted to discredit McMahon's finding, which relied on this report, by introducing an earlier police report which indicated that White had not anally sodomized the victim.  McMahon related that the police reports came up in her interview with White, because White felt it important to clarify that he had not committed that particular act (anally sodomizing the victim).  McMahon conceded that this earlier report was consistent with White's denial of anal penetration in his

---

[12] White included the report created by Rosell in the Appendix, but (as White acknowledges) that document was not part of the legal file and hence not part of the record on appeal.  "The mere inclusion of documents in an appendix to a brief does not make it part of the record on appeal."  *State ex rel. Miss. Lime v. Missouri Air*, 159 S.W.3d 376, 380 n. 2 (Mo. App. W.D. 2004).

[13] Though the record is inadequate on its face to permit us to determine whether Trial Counsel's performance conformed to the degree of skill, care and diligence of a reasonably competent attorney, (the *Strickland* performance prong), it is not inadequate to permit us to address the prejudice prong, which we discuss, *infra*.

16

interview with her. McMahon maintained that it was possible for the victim to have been assaulted in that manner and only share that fact later. We find the record sufficient to establish that this effort to discredit the foundation of the McMahon testimony was (as presumed) reasonable trial strategy, and that counsel's performance did not fail to conform to the degree of skill, care, and diligence of a reasonably competent attorney. *Anderson*, 564 S.W. 3d at 600.

In his fifth point on appeal, White maintains that his trial counsel was ineffective, when, in the course of his cross-examining McMahon regarding her calculation of his Static99-R score, counsel elicited testimony that was damaging to White's position.[14] In particular, White

---

[14] A portion of the Mueller cross-examination of McMahon follows:

Q. So in your opinion as a forensic evaluator is it important to have an understanding of what the specific details are on that offense or is it good enough for you to say sodomy, that's good, I don't need to know more?

A. When we're making a determination I think it's important to see what the facts of the case are, what the police are saying occurred, what the defender says occurred. You can look for discrepancies. If you have access to, you know, the facts of the case as indicated by police files, it's important to look at those.

Q. Did you in fact have access to the original police reports?

A. Yes.

Q. And have you reviewed those?

A. Yes, I have.

Q. Now isn't it true that Ron denied any kind of anal penetration on the victim in the index offense?

A. During my evaluation with him he did deny that.

Q. Isn't it true the original police reports also don't make any mention of anal penetration?

A. I would have to go back and look at original police report.

***

Q. Okay. And you didn't bring any records with you that contradict this original police report?

contends that this cross-examination of McMahon provided the only evidence which would indicate that White would be likely to reoffend. As previously discussed, this contention is inaccurate, as there was ample evidence that White had repeatedly committed sexual offenses, and committed the index offenses shortly after his release from prison on a separate offense and while on parole. Trial Counsel's cross-examination of McMahon revealed that White's score on the Static99R was 20.1%. By bringing this into evidence, White was able to argue that a 20% chance of reoffending did not mean that White was more likely than not to reoffend. Again, we find the record adequately demonstrates that this was a reasonable trial strategy, and that in conducting this portion of the cross-examination of McMahon, White's counsel conformed to the degree of skill, care, and diligence of a reasonably competent attorney.

To prevail on his claim of ineffective assistance of counsel, White must also show that he was prejudiced by his counsel's alleged failure to perform in a competent fashion (the second prong of the *Strickland* standard). *Id.* If we assume, *arguendo*, that White's Trial Counsel was ineffective in failing to call Rosell as a witness (which we cannot determine by the record), and that counsel was ineffective in his cross-examination of McMahon (which is actually refuted by the record), we find that the record is adequate to determine the second prong of the *Strickland* test: whether "there is a *reasonable probability* that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a

---

A. Unfortunately, most my records I get are on disk and I don't have access to a laptop while testifying. So it's not useful to bring the records I have.

Q. So you don't have any records in court today?

A. I don't.

18

probability sufficient to undermine confidence in the outcome." *Deck v. State*, 68 S.W.3d 418, 426 (Mo. banc 2002) (quoting *Strickland*, 466 U.S. at 694). "This standard is not met by showing that the errors 'had some conceivable effect on the outcome of the proceeding' or that the errors 'impaired the presentation of the defense,' as those standards are either unworkable or subject to being satisfied by every error." *Id*. (quoting *Strickland*, 466 U.S. at 693).

In the instant case, the evidence was that White had engaged in a pattern of repeated sexual assault on ten underage victims by the time he was nineteen; and that this pattern was only interrupted when he was imprisoned for sexual assault of a minor in Texas. This pattern resumed within five months after he was released from Texas when he committed the index offenses in Missouri, which occurred while he was on supervised parole. The evidence further established that White had failed to complete the Missouri Sex Offender Program while in prison and that he continued to act out sexually while in prison, despite the highly controlled correctional environment, and even though he incurred negative consequences for these actions. White also reported to Griffith that he "lately" had been masturbating to sexual thoughts of children. Based on that and other evidence, Griffith and McMahon both concluded that White suffered from a mental abnormality that caused him to have sexual desires for children and that he had not demonstrated an ability to control those urges.

White asserts in his second point on appeal that Rosell would have indicated that White was not a sexually violent predator; and the State appears to acknowledge that Rosell's opinion would have been that "the facts that [the State's] experts looked at do not lead me to the

conclusion that he has serious difficulty controlling his behavior."[15]  In light of the overwhelming evidence that White was unable to control his urges, the testimony of an expert (Rosell) who examined the same evidence, but purportedly came to a different conclusion than the State's two experts, without something more, does not demonstrate a reasonable probability that the jury would have come to a different conclusion.  Even if Rosell would have testified as alleged in White's Brief and as acknowledged by the State, and if we assume, *arguendo*, that counsel was ineffective in its cross-examination of McMahon, these purported errors do not undermine confidence in the outcome, and do not establish that "there is a reasonable probability that" the results of the proceeding would have been different.  *Liggins v. State*, 512 S.W.3d 847, 850 (Mo. App. E.D. 2017).

Points II, III, and V are denied.

## CONCLUSION

The judgment of the trial court is affirmed.

/s/ *Thomas N. Chapman*

Thomas N. Chapman, Presiding Judge

All concur.

---

[15] At trial, in the context of objecting to the testimony of defense expert Janus, counsel for the State characterized the Rosell opinion as follows: "An expert was hired.  Dr. Rosell was hired and Dr. Rosell issued a report saying, 'In my opinion, the facts that these experts looked at do not lead me to the conclusion that he has serious difficulty controlling his behavior.'  That is an appropriate expert witness."