In the Missouri Court of Appeals
 Eastern District
 DIVISION TWO

STATE OF MISSOURI, ) ED108518
 )
 Respondent, ) Appeal from the Circuit Court
 ) of Warren County
v. )
 ) 18BB-CR00003-01
TIMOTHY DEAN BURROUGHS, )
 ) Honorable Jason H. Lamb
 Appellant. )
 ) Filed: March 30, 2021

 Timothy Dean Burroughs (Appellant) appeals from the trial court’s judgment, after a jury

trial, convicting him of attempted rape in the first degree. He was sentenced to ten years of

imprisonment. We affirm.

 BACKGROUND

 The State of Missouri (State) charged Appellant with attempted rape in the first degree, in

violation of Section 566.030 RSMo. 1 The information alleged that on November 16, 2017, he

knowingly attempted to insert his penis into L.W.’s 2 vagina for the purpose of committing rape.

A jury trial was held on October 22, 2019. The parties stipulated to the fact L.W. was declared

incompetent on October 10, 2018, and as a result she was unavailable to testify as a witness at

1
 All statutory references are to RSMo (2016) as updated, unless otherwise indicated.
2
 Pursuant to Section 595.226 RSMo (2017), the victim’s full name is redacted.
trial. The parties further stipulated there was no evidence that L.W.’s incapacity was caused by

the alleged incident in this case. The trial court sustained Appellant’s motion in limine to

prohibit the hearsay statements of L.W. because they would violate his right to confrontation.

Viewed in the light most favorable to the jury’s verdict, the evidence adduced at trial showed the

following facts.

 Appellant met L.W. at a Conoco gas station one or two months before the incident

occurred. L.W. was homeless at the time and had been sleeping in her car with her service dog,

Lady Bug. Appellant offered to let L.W. stay with him and his mother. L.W. agreed and went

home with him. The next day, Appellant took L.W. to Agape – a local non-profit organization

where individuals living at or below poverty could seek assistance – and helped her obtain a

voucher to stay at a nearby hotel for the following two nights.

 Appellant did not see or hear from L.W. for the next two weeks until she called him from

a hospital in Washington, Missouri. She was unable to get into a homeless or women’s shelter

because of Lady Bug, so she asked to stay with him. Appellant picked her up from the hospital

and let her sleep on the sofa in the living room. L.W. stayed with Appellant and his mother for

about a month.

 On November 20, 2017, an ambulance was called because L.W. was having difficulty

breathing. Officer Tyler Czarnowsky (Officer Czarnowsky) of the Warrenton Police Department

responded to assist the first responders with transportation needs. When he arrived, he saw L.W.

sitting on the sofa and Appellant beside her. L.W. waved to Officer Czarnowsky to gain his

attention and mouthed or whispered, “help me.” Officer Czarnowsky asked Appellant to go into

the other room to retrieve L.W.’s medications. When Appellant left the room, L.W. repeated to

Officer Czarnowsky “help me” and then said, “he raped me.” Officer Czarnowsky told the first

 2
responders to take L.W. to the hospital. Officer Czarnowsky called his supervising officer en

route to the hospital and relayed what L.W. had told him.

 Detective Justin Unger (Detective Unger) met L.W. at the hospital and seized a red

“onesie” night gown that she reported wearing when the incident occurred. A sexual assault

nurse examiner (SANE), Angie Elgin (Nurse Elgin), conducted a SANE examination with L.W.,

which consisted of an interview and a sexual assault examination to collect and preserve forensic

evidence for the purpose of prosecution. During the SANE exam, Nurse Elgin found bruising on

L.W.’s inner thighs and used an ALS light to discover a laceration in her rectal area, but did not

take pictures of either injury.

 The next day, Detective Unger called Appellant and asked him to report to the Warrenton

Police Department to answer some questions. Appellant agreed. Detective Unger video

recorded his interview with Appellant (Interview Video). Appellant said L.W. sometimes took

medications that resulted in her sleeping heavily. He denied having sex with L.W. He said L.W.

slept on the couch. He admitted to pulling down L.W.’s pants on the first night she came home

with him and was sleeping on his bed, but she woke up and pulled her pants back up. L.W.

asked Appellant why he pulled her pants down; he told her he was horny. She told him she just

wanted to be friends and she “drew a line.” Detective Unger told Appellant that L.W. claimed he

had sex with her in a chair and she woke up and saw him penetrating her. She said she woke up

and found semen on her and he stopped when she told him to do so. Appellant denied all these

allegations.

 Appellant denied that he ever had sexual intercourse with L.W. He recalled that on the

night of the incident, L.W. was medicated and was stumbling around, so he helped her get on the

couch. He said she fell asleep but was still sitting upright on the couch, and he was on his knees

 3
in between her legs. He described her as wearing a red onesie matching the one seized at the

hospital. The onesie had buttons starting at the collar going down until the middle of the crotch

area. He said he unbuttoned her red onesie, tried to get his penis into her vagina but was unable

to get an erection and did not ejaculate. Detective Unger told Appellant he was having trouble

believing this given that L.W. said she woke up with semen on her. Appellant said L.W. woke

up and told him that he did not have her “consent.” He then retracted that statement, and said

she told him she “felt that.” Appellant said he then pulled his pants up. Detective Unger asked if

L.W. told him to stop. Appellant replied, “not that I know of.”

 The jury found Appellant guilty of attempted rape in the first degree and recommended a

punishment of ten years of imprisonment. The trial court sentenced him to ten years.

 This appeal follows.

 DISCUSSION

 Appellant raises eight points on appeal. Points I and VIII argue the trial court erred in

admitting Appellant’s extrajudicial statements to Detective Unger because there was insufficient

evidence of the corpus delicti of the offense. Points II and III challenge the admission of Officer

Czarnowsky’s testimony relating to L.W.’s statements because they violate the rule against

hearsay and the confrontation clause. Points IV, V, and VI challenge the trial court’s failure to

instruct the jury that L.W.’s statements could not be considered for the truth of the matter

asserted. Finally, Point VII argues there was insufficient evidence to find Appellant guilty of

attempted rape in the first degree because the State did not prove L.W. was incapacitated, lacked

consent, lacked the capacity to consent, or was subjected to forcible compulsion.

 4
 Points I and VIII

 In Point I, Appellant argues the trial court erred in admitting his extrajudicial statements

to Detective Unger, both in Detective Unger’s testimony and in playing the Interview Video, as

substantive evidence because there was insufficient proof of the corpus delicti of the offense of

attempted rape in the first degree. In Point VIII, Appellant argues the trial court erred in

overruling his motion for judgment of acquittal at the close of all the evidence because the State

failed to present independent proof of the corpus delicti – that Appellant tried to have sexual

intercourse with L.W. without her consent and while she was incapacitated. We address these

points together because they overlap on the corpus delicti issue. The State responds there was no

error because it presented slight but sufficient corroborating facts demonstrating L.W. was the

subject of a sexual assault.

 Preservation of Error

 The State asserts Appellant did not preserve his corpus delicti argument – that the trial

court improperly permitted Detective Unger to testify about Appellant’s extrajudicial statements

– because he failed to renew his objection at the time the State asked Detective Unger about

Appellant’s statements. To preserve a claim of error, counsel must object with sufficient

specificity to apprise the trial court of the grounds for the objection. State v. Amick, 462 S.W.3d

413, 415 (Mo. banc 2015). Where a party requests and receives a continuing objection from the

trial court, the objection is properly preserved for appeal unless expressly vitiated by later

statements at trial. State v. Baker, 103 S.W.3d 711, 716-17 (Mo. banc 2003).

 Appellant objected to the admission of all of his statements to Detective Unger on the

grounds that it would violate the rule requiring independent evidence of the corpus delicti. The

trial court overruled his objection, but granted him a continuing objection. Appellant included

 5
his corpus delicti argument in his motion for new trial. The State’s assertion amounts to a claim

that Appellant waived this argument because he failed to renew his objection on the grounds of

corpus delicti. However, the Missouri Supreme Court has held that a continuing objection

preserves the issue even under circumstances where the party repeatedly said “no objection” in

response to the admission of evidence. See Baker, 103 S.W.3d at 717. Appellant did not have

an obligation to renew his objection by reasserting the argument for which he had already been

granted a continuing objection. Accordingly, Appellant properly preserved his objection to the

admission of his extrajudicial statements to Detective Unger on the basis of corpus delicti.

 Having determined that Appellant properly preserved his corpus delicti argument, we

review the trial court’s admission of Detective Unger’s testimony and the Interview Video for an

abuse of discretion.

 Standard of Review

 Trial courts have broad discretion to admit or exclude evidence at trial. State v.

Cannafax, 344 S.W.3d 279, 285 (Mo. App. S.D. 2011). An abuse of discretion occurs where the

ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that it

shocks the sense of justice and indicates a lack of careful, deliberate consideration. Id. (citing

State v. Davis, 318 S.W.3d 618, 630 (Mo. banc 2010)). Our Southern District explained the

scope of our review for abuse of discretion in admitting evidence:

 “We review trial court decisions regarding the admission or exclusion of evidence
 for abuse of discretion.” Abuse of discretion refers to the “propriety” of a trial
 court’s ruling—the attendant prejudice (if any) is a separate and independent
 consideration. We test the trial court’s application of the law to the “factual
 underpinnings” of its ruling, giving deference to the trial court’s explicit and
 implicit credibility determinations. We discern the “factual underpinnings” from
 the record at the time of the challenged ruling. These factual underpinning findings
 frame the reviewing court’s de novo review of the underlying legal question in the
 evidentiary challenge.

 6
State v. Rose, 542 S.W.3d 428, 430-31 (Mo. App. S.D. 2018) (internal citations omitted)

(emphasis in original). In reviewing evidence, we consider all evidence and reasonable

inferences in the light most favorable to the trial court’s ruling. State v. Clemons, 946 S.W.2d

206, 218 (Mo. banc 1997).

 Analysis

 An accused’s extrajudicial admissions, statements, or confessions are inadmissible unless

the State offers independent proof of the corpus delicti of the offense. Cannafax, 344 S.W.3d at

286 (quoting State v. Benton, 812 S.W.2d 736, 740 (Mo. App. W.D. 1991)). The term “corpus

delicti” is Latin for “body of the crime.” State v. Madorie, 156 S.W.3d 351, 353 (Mo. banc

2005) (citing Black’s Law Dictionary 346 (7th ed. 1999)). “The term is used in the context of

criminal law to describe the prosecutor’s burden of proving that a crime was committed by

someone, independent from a defendant’s extrajudicial statements.” Id. (emphasis in original).

 The State establishes the corpus delicti of any criminal offense by showing: (1) proof,

direct or circumstantial, that the specific loss or injury occurred; and (2) someone’s criminality

was the cause of that loss or injury. Cannafax, 344 S.W.3d at 286; State v. Crenshaw, 59 S.W.3d

45, 49 (Mo. App. E.D. 2001). The State has the burden of establishing the corpus delicti of the

offense. Cannafax, 344 S.W.3d at 286 (citing State v. Sardeson, 220 S.W.3d 458, 470 (Mo.

App. S.D. 2007)). In meeting its burden, the State need only show “slight corroborating facts”

tending to establish the corpus delicti corresponding with the extrajudicial statement. State v.

Lilly, 410 S.W.3d 699, 702 (Mo. App. W.D. 2013); Madorie, 156 S.W.3d at 355. The

determination of whether there is sufficient independent evidence of the corpus delicti of an

offense is fact specific, and requires a case-by-case evaluation. Madorie, 156 S.W.3d at 355.

This is because the State’s proffered independent evidence must “correspond and interrelate”

 7
with the circumstances described in the accused’s extrajudicial statement, and show that the

charged offense was actually committed. Id.

 A person commits attempted rape in the first degree when said person, with the purpose

of committing the offense, takes a substantial step toward having “sexual intercourse with

another person who is incapacitated, incapable of consent, or lacks the capacity to consent, or by

the use of forcible compulsion.” Section 566.030; see also State v. Withrow, 8 S.W.3d 75, 78

(Mo. banc 1999) (discussing the elements of attempt to commit a crime). For Appellant’s

extrajudicial statements to be admissible, the State must show independent circumstances

establishing the corpus delicti of attempted rape which slightly corroborate Appellant’s

statements. Importantly, if there is evidence of corroborating circumstances independent of the

confession, which tends to prove the offense by confirming matters related in the confession,

both the corroborating circumstances and the confession may be considered in determining

whether the corpus delicti has been established. State v. Miller, 139 S.W.3d 632, 637 (Mo. App.

S.D. 2004).

 The trial court ruled the State established the first element of the corpus delicti for

attempted rape from the following independent circumstances: (1) the SANE exam; (2) physical

evidence of the red onesie; and (3) observations of L.W.’s demeanor. These three grounds

constitute the “factual underpinning” of the trial court’s ruling on the admissibility of

Appellant’s extrajudicial statements. See Rose, 542 S.W.3d at 430-31. Thus, we must determine

whether the trial court abused its discretion in finding these facts establish the corpus delicti and

slightly corroborate Appellant’s statement.

 The SANE Exam
 Nurse Elgin testified she found a scratch on L.W.’s anus and a bruise on her inner thigh.

The State argues the anal scratch and thigh bruise show that a sexual assault of some kind was

 8
perpetrated against L.W. The State’s information charged Appellant as follows: “on or about

November 16, 2017, in the County of Warren, State of Missouri, [Appellant] knowingly tried to

insert his penis into [L.W.]’s vagina and such conduct was a substantial step toward the

commission of the offense of rape in the first degree with [L.W.], and was done for the purpose

of committing such rape.” Nurse Elgin’s testimony that she found a bruise on L.W.’s thigh,

while not specifically corroborated in any of Appellant’s extrajudicial statements, is at the very

least probative of whether someone took a substantial step toward committing rape against L.W.

The trial court could reasonably infer from this finding – a bruised thigh in the context of a

SANE examination – resulted from Appellant taking a substantial step toward inserting his penis

in L.W.’s vagina.

 The Red Onesie
 At trial, the State presented physical evidence of the red onesie L.W. allegedly wore at

the time of the attempted rape. The red onesie seized by Detective Unger from L.W. at the

hospital corroborates Appellant’s extrajudicial statement that L.W. was wearing old-time

pajamas at the time of the incident, which he unbuttoned in his attempt to insert his penis in

L.W.’s vagina. While proof of the existence of a red onesie does not equate to proof of the

offense charged – attempted rape – it does “tend to prove the offense by confirming matters

related in the confession.” Miller, 139 S.W.3d at 637.

 L.W.’s Demeanor
 Nurse Elgin and Officer Czarnowsky testified regarding L.W.’s demeanor. Nurse Elgin

testified that L.W. was crying during the SANE exam, and described her as “inconsolable.”

Officer Czarnowsky testified L.W. was “distraught.”

 The first element of corpus delicti is proof that the injury or harm constituting the crime

occurred. Cannafax, 344 S.W.3d at 286; Crenshaw, 59 S.W.3d at 49. Here, the State offered

 9
L.W.’s demeanor to prove Appellant attempted to rape her. The trial court could reasonably

infer that L.W.’s “distraught” and “inconsolable” demeanor was some evidence of the “injury or

harm” of the crime of attempted rape.

 The totality of the circumstances constitute independent evidence that an attempted rape

occurred: (1) Nurse Elgin’s discovery of L.W.’s bruised thigh during the SANE exam; (2) the

red onesie Appellant described L.W. as wearing during the incident in his extrajudicial

statements to Detective Unger; and (3) Officer Czarnowsky and Nurse Elgin’s observations of

L.W.’s demeanor. The trial court did not abuse its discretion in finding the first element of the

corpus delicti was met.

 The second element of corpus delicti is proof that the injury or harm constituting the

crime was done in a criminal manner, or was occasioned by criminal activity. Cannafax, 344

S.W.3d at 286; Crenshaw, 59 S.W.3d at 49. This element would be proof that the harm or injury

of attempted rape was caused by someone’s criminality.

 At the time of its ruling on the admissibility of Appellant’s extrajudicial statements, the

trial court heard testimony from Officer Czarnowsky about Appellant’s demeanor. Officer

Czarnowsky testified Appellant’s behavior at the time he arrived at Appellant’s house seemed

suspicious to him because, when he typically responds to EMS calls, people are concerned with

the person needing help, but Appellant was overly concerned about where L.W. was going and

why law enforcement was there. From this testimony, the trial court could infer that Appellant

was acting suspicious and overly concerned about the presence of law enforcement because he

was worried he would be accused of attempting to rape L.W.

 Where reasonable minds could differ on the propriety of a trial court’s evidentiary ruling,

it is not an abuse of discretion. Rose, 542 S.W.3d at 430. Therefore, the trial court did not abuse

 10
its discretion in admitting Appellant’s extrajudicial statements through Detective Unger’s

testimony and playing the Interview Video. Points I and VIII are denied.

 Points II and III

 In Point II, Appellant argues the trial court erred in allowing Officer Czarnowsky to

testify regarding L.W.’s statement that “he raped me” because the record shows it was offered to

prove the truth of the matter asserted and not to explain subsequent conduct, in that it went

beyond what was necessary to show subsequent conduct. In Point III, Appellant challenges the

same ruling and argues it was improperly admitted because L.W.’s statement that “he raped me”

was testimonial hearsay, in that the primary purpose of the statement was to establish a past

event potentially relevant to future prosecution. Despite the differences in the standard of review

for each claim, 3 we address them together because they concern the same evidence.

 Standard of Review

 A claim that hearsay was improperly admitted is reviewed for an abuse of the trial court’s

discretion. See State v. Mosely, 599 S.W.3d 236, 249 (Mo. App. W.D. 2020). The standard of

review was set out by our Supreme Court in State v. Wood:

 A trial court has broad discretion to admit or exclude evidence during a criminal
 trial, and error occurs only when there is a clear abuse of this discretion. A trial
 court abuses its discretion only if its decision to admit or exclude evidence is clearly
 against the logic of the circumstances then before the court and is so unreasonable
 and arbitrary that it shocks the sense of justice and indicates a lack of careful,
 deliberate consideration. This Court will reverse the trial court's decision only if
 there is a reasonable probability that the error affected the outcome of the trial or
 deprived the defendant of a fair trial.

580 S.W.3d 566, 574 (Mo. banc 2019) (internal quotations and citations omitted).

3
 Improperly admitted hearsay is reviewed for an abuse of the trial court’s discretion. State v. Mosely, 599 S.W.3d
236, 249 (Mo. App. W.D. 2020). Improperly admitted testimonial evidence is reviewed de novo. State v. Roy, 597
S.W.3d 710, 719 (Mo. App. S.D. 2020).

 11
 A criminal defendant’s claim that testimonial evidence was improperly admitted,

violating the defendant’s rights under the Confrontation Clause, is reviewed de novo. State v.

March, 216 S.W.3d 663, 664-65 (Mo. banc 2007); State v. Roy, 597 S.W.3d 710, 719 (Mo. App.

S.D. 2020). The alleged testimonial evidence is compared against the line of cases stemming

from Crawford v. Washington, 541 U.S. 36 (2004), and summarized by the United States

Supreme Court in Ohio v. Clark, 576 U.S. 237 (2015). See Roy, 597 S.W.3d at 719-21.

 Analysis

 The Sixth Amendment’s Confrontation Clause and the evidentiary hearsay rule stem

from the same roots. Giles v. California, 544 U.S. 353, 358-59 (2008); Roy, 597 S.W.3d at 721.

The rules against admitting hearsay and testimonial evidence do not prohibit the admission of

testimony offered for a legitimate purpose other than to establish the truth of the matter asserted.

See Roy, 597 S.W.3d at 721-22. One such legitimate purpose is testimony offered to explain

subsequent police conduct. See State v. Cummings, 400 S.W.3d 495, 507 (Mo. App. S.D. 2013)

(quoting State v. Allison, 326 S.W.3d 81, 90 (Mo. App. W.D. 2010) (“An out-of-court statement

offered not for the truth of the matter asserted, but to explain subsequent police conduct, is not

hearsay and is therefore, admissible assuming it is relevant.”)).

 Here, the State offered Officer Czarnowsky’s testimony that L.W. said “he raped me” to

explain subsequent police conduct, including: (1) why he instructed first responders to take

L.W. to the hospital, and (2) why there was an investigation into a sexual assault. Appellant

argues Officer Czarnowsky’s testimony was not necessary to explain how L.W. arrived at the

hospital, nor why the police began investigating a sexual assault. See State v. Robinson, 111

S.W.3d 510, 514-15 (Mo. App. S.D. 2003) (out-of-court statement that went beyond the scope

necessary to show subsequent conduct of law enforcement was improperly admitted); State v.

 12
Douglas, 131 S.W.3d 818, 824 (Mo. App. W.D. 2004) (“[W]hen such out-of-court statements go

beyond what is necessary to explain subsequent police conduct, they are hearsay, unless they

qualify as non-hearsay on another basis.”) (citations omitted).

 Appellant argues L.W.’s statement to Officer Czarnowsky was unnecessary to explain

why she went to the hospital because EMS was originally called due to the fact L.W. had

difficulty breathing. Appellant asserts her breathing problem was sufficient to explain why she

was taken to the hospital. The State responds Officer Czarnowsky’s testimony also explains why

L.W. was given a SANE exam – because she told Officer Czarnowsky she was raped. Without

Officer Czarnowsky’s testimony relating L.W.’s allegations of rape, the jury would be left to

“speculate on the cause or reasons for the officer’s subsequent activities.” State v. Pieron, 755

S.W.2d 303, 307 (Mo. App. E.D. 1988). However, L.W.’s statement to Officer Czarnowsky

could not be used to show why Nurse Elgin conducted a SANE examination, since the statement

was only admissible to explain Officer Czarnowsky’s subsequent conduct, not Nurse Elgin’s

subsequent conduct. 4

 The legitimate purpose served by Officer Czarnowsky’s testimony is that it explains his

subsequent conduct. His relevant conduct after L.W.’s statement amounts to: (1) directing first

responders to take L.W. to the hospital, and (2) contacting his supervisor to instigate an

investigation into a possible sexual assault. On the other hand, Officer Czarnowsky’s testimony

could also serve an illegitimate purpose by directly implicating Appellant as guilty of

4
 Using an out-of-court statement to explain the subsequent conduct of someone other than the testifying officer was
rejected in State v. Hoover:
 The State's position appears to depend analytically on those cases which permit a police officer to
 testify to a declarant's out of court statements offered to explain the testifying officer's subsequent
 conduct. However, the obvious problem with such a theory of admissibility here is that the State
 did not use Robert Hoover's statements to police to explain the police officers' subsequent conduct
 but rather Defendant's subsequent conduct.
220 S.W.3d 395, 406-07 (Mo. App. E.D. 2007) (citations omitted).

 13
committing rape through the statements of an unavailable witness who was never subject to

cross-examination. See State v. Hoover, 220 S.W.3d 395, 407 (Mo. App. E.D. 2007) (out-of-

court statements offered through testifying police officers are not admissible if they directly

connect the defendant to the crime); State v. Shigemura, 680 S.W.2d 256, 257 (Mo. App. E.D.

1984) (rejecting state’s position that statement was offered merely to explain subsequent police

conduct and not for its truth where statement directly connected defendant to the crime).

 We find Officer Czarnowsky’s testimony repeating L.W.’s out-of-court statements were

admissible to explain his subsequent conduct of directing L.W. to the hospital and contacting his

supervisor to instigate an investigation into a possible sexual assault. Officer Czarnowsky’s

testimony did not violate Appellant’s rights under the Confrontation Clause because the

statements were not offered to prove the truth of L.W.’s allegations, but rather to explain Officer

Czarnowsky’s subsequent conduct. Accordingly, the trial court did not err in admitting Officer

Czarnowsky’s testimony. Points II and III are denied.

 Points IV, V, and VI

 In Points IV, V, and VI, Appellant argues the trial court erred by failing to instruct the

jury that L.W.’s statements could not be considered for their truth. Point IV concerns Officer

Czarnowsky’s testimony that L.W. said “he raped me.” Point V concerns Detective Unger’s

statements in the Interview Video relating L.W.’s statements while interrogating Appellant.

Point VI concerns statements made during the State’s closing argument.

 Standard of Review

 The decision whether to give a cautionary instruction is generally within the trial court’s

discretion. White v. State, 576 S.W.3d 285, 293 (Mo. App. W.D. 2019). In exercising this

discretion, the trial court should be guided by the degree to which the jury may be misled by the

 14
evidence. Id. When a trial court receives evidence admissible for one purpose but not for

another, a party upon request is entitled to an instruction limiting the extent and purpose for

which the jury may consider the evidence. Id. (citing Eltiste v. Ford Motor Co., 167 S.W.3d

742, 756 (Mo. App. E.D. 2005)). If a trial court fails to issue such an instruction upon request by

a party, it is error. Eltiste, 167 S.W.3d at 756. However, reversal is warranted only if the trial

court’s failure to provide the instruction materially affected the result of the trial. White, 576

S.W.3d at 293.

 Analysis

 The trial court admitted Officer Czarnowsky’s testimony that L.W. said “he raped me” to

explain his subsequent conduct in directing L.W. to the hospital and contacting his supervisor to

begin an investigation into a possible sexual assault. This testimony was admissible to explain

subsequent police conduct, but inadmissible to prove the truth of the matter asserted – that

Appellant raped L.W. Appellant asked the trial court to instruct the jury that L.W.’s statements

could not be considered for their truth, but the trial court denied his request, stating, “I think

that’s up to the prosecutor. If she wants to make that part of her questioning, that’s up to her,

that that was – the representation is not for the truth.” Additionally, the prosecutor made the

following statement in its closing argument, “Now, how do we know that he’s committed this

offense? Well, first of all she reported a sexual assault.” The trial court sustained Defense

counsel’s objection, but did not offer any guidance to the jury.

 In refusing to instruct the jury as requested, the trial court erred. See White, 576 S.W.3d

at 293. The trial court abdicated its responsibility to limit the jury’s consideration of the

evidence to its sole admissible purpose – to explain Officer Czarnowsky’s subsequent actions.

This error is troublesome because the trial court relied on the prosecutor to fulfill its obligation to

 15
instruct the jury on the permissible considerations in reaching a verdict. Instead of fulfilling its

duty, the trial court left it “up to the prosecutor” whether she wanted to inform the jurors that

they could not consider Officer Czarnowsky’s testimony for its truth. We do not fault the

prosecutor for failing to instruct the jury because she was merely performing her role as advocate

for the State. Even if the prosecutor had complied with the trial court’s request, error would still

exist because it is the role of the judge to instruct the jury on the law. See State v. Rycraw, 507

S.W.3d 47, 63-64 (Mo. App. E.D. 2016) (“We presume the jury followed the instructions given

by the trial court, not the prosecutor’s closing arguments.”) (emphasis in original) (citation

omitted). However, error alone is insufficient to reverse the trial court, for we must also

determine whether the error materially affected the outcome of the trial. White, 576 S.W.3d at

293.

 Appellant argues he was prejudiced because he was unable to cross-examine L.W. and

her statements directly connected him to the offense. The State responds that Appellant was not

prejudiced because the jury heard Appellant’s own extrajudicial statements admitting to

attempting to rape L.W. and in closing arguments Defense counsel expressly reminded the jury

that L.W.’s statement could not be considered for its truth. In essence, the State argues that

Appellant’s extrajudicial statements are such overwhelming proof of his guilt, that any error

would be harmless. See State v. Leisure, 796 S.W.2d 875, 880 (Mo. banc 1990) (“Error, which

in a close case might call for reversal, may be disregarded as harmless when the evidence of guilt

is strong.”). We agree that Appellant’s statements to Detective Unger were strong evidence of

guilt. Appellant described unbuttoning L.W.’s red onesie and trying to insert his partially erect

penis inside L.W.’s vagina, but did not ejaculate. L.W. woke up and indicated he did not have

her consent. Moreover, Appellant expressed regret for what he did to L.W. because he

 16
considered it rape. These extrajudicial statements, which were properly admitted (see discussion

of Points I and VIII, supra), were such strong evidence of guilt that the trial court’s failure to

instruct the jury as requested constituted harmless error. Points IV, V, and VI are denied.

 Point VII

 In Point VII, Appellant argues the trial court erred in overruling his motion for judgment

of acquittal at the close of all the evidence in that the State did not present sufficient evidence

that L.W. was incapacitated, incapable of consent, lacked the capacity to consent, or was

subjected to forcible compulsion.

 Standard of Review

 Appellate review of sufficiency of the evidence is limited to whether the state has

introduced sufficient evidence from which a reasonable juror could have found each element of

the crime beyond a reasonable doubt. State v. Hosier, 454 S.W.3d 883, 898 (Mo. banc 2015)

(citing State v. Nash, 339 S.W.3d 500, 508-09 (Mo. banc 2011)). The evidence and reasonable

inferences drawn therefrom are considered in the light most favorable to the verdict. Id. To

succeed on a sufficiency claim, an appellant must (1) identify the element of the crime he claims

was not proven, (2) set forth the evidence in the record tending to prove that element and (3)

show why such evidence and the reasonable inferences therefrom are so non-probative that no

reasonable factfinder could have found that element was sufficiently proven. State v. Johnson,

603 S.W.3d 371, 376 (Mo. App. E.D. 2020) (citing State v. Finch, 398 S.W.3d 928, 929 (Mo.

App. S.D. 2013)).

 Analysis

 Appellant was convicted of attempted rape in the first degree. A person is guilty of an

attempt to commit an offense if, “with the purpose of committing the offense, a person performs

 17
any act which is a substantial step towards the commission of the offense.” Section 562.012.1.

That statute defines a “substantial step” as “conduct which is strongly corroborative of the

firmness of the actor’s purpose to complete the commission of the offense.” Section 562.012.1.

The offense of rape in the first degree is defined as follows:

 A person commits the offense of rape in the first degree if he or she has sexual
 intercourse with another person who is incapacitated, incapable of consent, or lacks
 the capacity to consent, or by the use of forcible compulsion. Forcible compulsion
 includes the use of a substance administered without a victim’s knowledge or
 consent which renders the victim physically or mentally impaired so as to be
 incapable of making an informed consent to sexual intercourse.

Section 566.030.1. Finally, Section 556.061 defines “incapacitated” as “a temporary or

permanent physical or mental condition in which a person is unconscious, unable to appraise the

nature of his or her conduct, or unable to communicate unwillingness to an act.”

 Appellant argues L.W. was not incapacitated when he unbuttoned her red onesie and

attempted to insert his penis into her vagina because she woke up and indicated she did not

consent. Appellant asserts L.W. was awake, apprised the nature of her conduct, and indicated

she did not want to have sex with him. However, without regard to whether or not L.W.

ultimately refused to consent to sex with Appellant, the record makes clear that at some point,

Appellant tried to have sex with L.W. while she was asleep. Indeed, Appellant’s own arguments

acknowledge that L.W. was sleeping when she awoke to find her red onesie unbuttoned and

Appellant between her legs with his partially erect penis out of his pants.

 The jury could have determined that L.W. was “incapacitated” while she was asleep

notwithstanding Appellant’s statements that she eventually woke up, especially after observing

the Interview Video. Similarly, the jury could have reasonably found Appellant’s conduct before

waking L.W. – unbuttoning her red onesie and pulling his penis out of his pants – to constitute

the substantial step toward committing rape. The factfinder is free to believe parts of the

 18
evidence and disregard others, and it is not our role to reweigh the evidence on appeal. See

Nash, 339 S.W.3d at 511. Accordingly, the trial court did not err in finding sufficient evidence

of L.W.’s incapacity to submit the case to the jury. Point VII is denied.

 CONCLUSION

 The judgment of the trial court is affirmed.

 ____________________________________
 Lisa P. Page, Judge

Robin Ransom, P.J. and
Sherri B. Sullivan, J., concur.

 19